UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Floyd Lowe,<br><br>　　　　　Plaintiff(s),<br><br>　　v.<br><br>Department of Corrections of the State of California, et al.,<br><br>　　　　　Defendant(s). | CASE NO. SCIV06-01623DOC<br><br>**O R D E R GRANTING MOTION FOR SUMMARY JUDGMENT** |

　　　Before the Court is Defendants Alfredo Noriega, M.D., Kou-Ying Hsieh, M.D., and Raquel Padilla-Fuentes' Motion for Summary Judgement. After considering the moving and replying papers,[1] the Court hereby GRANTS the Motion.

## I. BACKGROUND

　　　Plaintiff Floyd Lowe ("Plaintiff") filed the instant lawsuit under 42 U.S.C. § 1983 alleging that Defendants Alfredo Noriega ("Noriega"), Kou-Ying Hsieh ("Hsieh") and Raquel

---

[1] Plaintiff has failed to oppose this Motion.

Padilla-Fuentes ("Padilla-Fuentes") were deliberately indifferent to his medical needs in violation of the Eigth Amendment's prohibition against cruel and unusual punishment.

On October 22, 2005, Plaintiff was imprisoned in cell 227 at California State Prison Solano ("CSP Solano"). As Plaintiff climbed out of his top bunk bed, he slipped and hit his right knee against the toilet, causing both his right knee and right ankle to become swollen, and preventing him from walking without the aid of crutches.

Plaintiff alleges that he met with Doctor Bakewell ("Bakewell") on October 25, 2005, and was told that he would need physical therapy for his knee. Plaintiff alleges that he was never given the physical therapy that was recommended. Plaintiff claims that on December 15, 2005, he met with Defendant Noriega and was told he no longer needed crutches.

Plaintiff alleges that he continued to suffer tremendous pain in his right knee but was never given medical care. Finally, on October 16, 2006, Plaintiff had an MRI done which showed that his bone was cracked. Plaintiff alleges that following this MRI, he was again refused treatment for his pain.

On July 13, 2006, Plaintiff alleges that he approached Defendant Padilla-Fuentes about pain in his knee and that Padilla-Fuentes refused to seek medical treatment for Plaintiff.

On November 20, 2006, Plaintiff claims that he was given Naproxen for his pain and that when he told the doctor that the pain medication was not working, the doctor did nothing. On November 28, 2006, Plaintiff met with Defendant Hsieh who changed Plaintiff's pain medication to Tylenol 3.

Plaintiff alleges that after experiencing significant pain for some time, it was finally decided that surgery would be performed on his knee. Following surgery, Plaintiff claims that Doctor Freedhand prescribed Vicodin for the pain. Plaintiff alleges that when he returned to CSP Solano, Defendant Noriega changed his prescription to Tylenol 3. Plaintiff claims that Defendant Noriega never talked to him or saw him following surgery and that Plaintiff should have been given Vicodin or something equivalent to it for his pain.

Defendants' version of the facts are somewhat contradictory to those presented by Plaintiff in his Complaint. (Again, Plaintiff has failed to oppose this Motion). According to

1  Defendants, Defendant Noriega saw Plaintiff for the first time on December 15, 2005, for
2  complaints of right knee pain.  Noriega noted that the x-ray of the knee was negative and that
3  there was no swelling or tenderness.  Noriega diagnosed contusion of the knee subsiding and
4  prescribed a Neoprene brace and discontinued the prescription for crutches because there was no
5  medical need for them.
6        Plaintiff was seen again on October 29, 2006, October 30, 2006, January 30, 2006 and
7  April 24, 2006, in the medical clinic and had no complaints of knee pain on those dates.
8        On July 19, 2006, Plaintiff notified Defendant Padilla-Fuentes that he wanted to be seen
9  by medical for complaints of leg pain.  Officer Padilla-Fuentes claims that she contacted the
10 medical department and spoke with the medical technical assistant who scheduled Plaintiff for
11 an appointment on July 20, 2006.  Plaintiff was seen on July 20, 2006 by Nurse practitioner
12 Karen Mahon for complaints of right knee pain and pain to the right great toe.  Nurse Mahon
13 noted that the knee ligaments were stable and referred Plaintiff for an MRI of his knee.
14       An MRI was taken of the right knee on October 6, 2006, which showed a non-displaced
15 fracture through the lateral aspect of the tibial plateau.  On October 31, 2006, Plaintiff was seen
16 for follow-up studies by Dr. Rohrer who referred Plaintiff to an orthopedist.
17       Between October 2006 and February 2007, Plaintiff saw several other doctors regarding
18 his right knee pain.  Finally on February 5, 2007, Plaintiff saw orthopedist Dr. Freedhand who
19 diagnosed Plaintiff with medial meniscus tear and discussed operative and non-operative
20 treatment options with Plaintiff.  Plaintiff elected to have surgery performed on his right knee.
21       On February 22, 2007, Defendant Hsieh saw Plaintiff for right knee complaints.  At this
22 time, Plaintiff was taking Naproxen for pain and requested stronger medication.  Hsieh
23 prescribed Tylenol 3 which is a stronger medication than Naproxen.
24       On April 13, 2007, Plaintiff underwent right knee arthroscopy and partial lateral
25 meniscectomy by Dr. Freedhand.  Post-operative instructions recommended Vicodin for pain as
26 needed.  However, there were no instructions for canes or crutches.
27       When Plaintiff returned to CSP Solano on April 19, 2007, he was prescribed Tylenol 3
28 which is a medically accepted substitute for Vicodin.  Vicodin is a medication that is not

1  available at CSP Solano.

2  Plaintiff was seen by Dr. Hsieh on April 23, 2008 for a follow-up regarding his right
3  knee. Hsieh alleges that there was not redness or drainage from the surgical site, that Plaintiff
4  had no problems with mobility, and that he did not complain of any pain or discomfort.

5  On May 7, 2007, Plaintiff was seen by Dr. Freedhand for a post surgery follow-up. Dr.
6  Freedhand noted Plaintiff had full mobility and was doing well. No pain was noted and no
7  further follow-up was scheduled by Dr. Freedhand.

8  Again, the facts as presented by Defendants in their Motion for Summary Judgment and
9  supporting declarations are unopposed by Plaintiff.

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, then "an opposing party may not rely merely on allegations on denials or its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party. Fed. R. Civ. P. 56(e)(2); *see also Anderson,* 477 U.S. at 248-49. Furthermore, a party cannot create a genuine issue of material fact simply by making assertions in its legal papers.

1   There must be specific, admissible evidence identifying the basis for the dispute. *S.A.
2   Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th
3   Cir. 1980).  The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . .
4   will be insufficient; there must be evidence on which the jury could reasonably find for [the
5   opposing party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

7   When prison officials are deliberately indifferent to the serious medical needs of those
8   under their control, the Eighth Amendment proscription against cruel and unusual punishment is
9   violated.  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).  A determination of
10  deliberate indifference requires an examination of two elements: (1) the seriousness of the
11  prisoner's medical needs; and (2) the nature of the defendant's response to that need. *McGuckin
12  v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds).

13  "[A] complaint that a physician has been negligent in diagnosing or treating a medical
14  condition does not state a valid claim of medical mistreatment under the Eighth Amendment.
15  Medical malpractice does not become a constitutional violation merely because the victim is a
16  prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Isolated occurrences of neglect do not
17  constitute deliberate indifference to serious medical needs.  *See Jett v. Penner*, 439 F.3d. 1091,
18  1096 (9th Cir. 2006).  To establish deliberate indifference, the prison official must know of, and
19  disregard, an excessive risk to the patient's health and safety.  *Toguchi v. Chung*, 391 F.3d
20  1057-1058.  The prison official must not only be aware of facts from which the inference could
21  be drawn that a substantial risk of serious harm exists, but must actually draw the inference.  *Id.*

22  In his Complaint, Plaintiff claims that Defendants were deliberately indifferent when they
23  failed to provide Plaintiff with proper medical treatment and pain medication.  However, the
24  unopposed facts presented by Defendants and the provided declarations show that at no time did
25  any of the Defendants refuse Plaintiff medical care that Defendants believed he needed or
26  disregard an excessive risk to Plaintiff's health or safety.

27  With respect to Defendant Padilla-Fuentes, the only interaction she had with Plaintiff
28  occurred on July 19, 2006, during which Plaintiff asked for medical care.  Following this

interaction, Padilla-Fuentes contacted the medical department and scheduled an appointment for Plaintiff for the following day.  Plaintiff has provided no further evidence or facts to show that he was harmed by any delay of treatment or that he had any other interaction with Padilla-Fuentes during which she showed any sort of indifference to his medical needs, and as such, summary judgment in favor of Defendant Padilla-Fuentes is appropriate.

With respect to Defendant Noriega, Plaintiff alleges that Noriega was indifferent to Plaintiff when Noriega took away Plaintiff's crutches following their initial meeting on December 15, 2005, and was indifferent again later when Noriega prescribed Plaintiff Tylenol 3 instead of Vicodin and refused to give him crutches.  As the *Sanchez* Court points out, however, disagreement with diagnosis or treatment does not support a claim of deliberate indifference.  891 F.2d at 242.  The pain medication that Noriega gave Plaintiff is a medically accepted substitute for Vicodin, and CPS Solano does not have Vicodin.  Furthermore, Noriega, being a doctor and in his professional opinion, determined that there was no medical need for the use of crutches.  Again, as the *Sanchez* Court makes clear, Plaintiff's disagreement with Noriega's determinations does not support a claim of deliberate indifference.  The facts indicate no incident where Noriega refused to provide medical care to Plaintiff which Noriega believed Plaintiff needed, nor do they show that Noriega at anytime knowingly disregarded an excessive risk to Plaintiff's health or safety.  What the facts do show is that Noriega met with Plaintiff when he was experiencing pain, examined him, diagnosed him, and offered treatment.  There is nothing to indicate misconduct on Noriega's part, and as such, summary judgment in favor of Defendant Noriega is proper.

Lastly, with respect to Defendant Hsieh, Plaintiff does not allege any facts or provide any evidence to show that Hsieh was deliberately indifferent to Plaintiff regarding his medical needs in any way.  Defendant first saw Plaintiff for right knee complaints on February 22, 2007.  Plaintiff was taking Naproxen for pain at the time and asked for something stronger.  Defendant gave Plaintiff Tylenol 3 which is a stronger medication than Naproxen.  No facts indicate that Defendant was indifferent towards Plaintiff during this appointment; Plaintiff asked for stronger pain medication, and Defendant prescribed it to him.  Plaintiff was next seen by Defendant

1   Hsieh on April 23, 2008, following the surgery on his right knee.  Upon examining Plaintiff,
2   Defendant noted that there was no redness or drainage from the surgical site, and that Plaintiff
3   had no problems with mobility or discomfort.  Again, there are no facts or evidence to show that
4   during this appointment, Defendant Hsieh refused to provide medical care or disregarded an
5   excessive risk to Plaintiff's health or safety.  Rather, the facts only seem to indicate that Hsieh
6   thoroughly examined Plaintiff following surgery and made sure that his knee was properly
7   healing and that he was experiencing minimum discomfort.  Therefore, summary judgment in
8   favor of Defendant Hsieh is appropriate.

9        Based on the undisputed facts, there is no showing that any of the Defendants in this case
10  were deliberately indifferent to Plaintiff's medical needs.  From the undisputed facts, it is clear
11  that each Defendant responded to Plaintiff's complaints and promptly examined and treated him
12  or referred him to someone to do so.  It does not appear that any of the Defendants knew of and
13  disregarded an excessive risk to the Plaintiff's health and safety.  Therefore, none of the
14  Defendant's were deliberately indifferent in treating or attending to the Plaintiff and did not
15  violate Plaintiff's constitutional right to be free from cruel and unusual punishment.

16       Consequently, the undisputed facts demonstrate that Defendants are entitled to summary
17  judgment on Plaintiff's Complaint.

## IV. DISPOSITION

19       For the foregoing reasons, Defendants' Motion for Summary Judgment is hereby
20  GRANTED.
21  IT IS SO ORDERED.
22  DATED: July 29, 2009

_____
DAVID O. CARTER
United States District Judge
Sitting by Designation